IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| RONALD HENDERSON, aka RONNIE HENDERSON, | ) ) ) | CV. NO. 07-00101 DAE LEK |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| ALEXANDER & BALDWIN, INC. DBA HAWAIIAN COMMERCIAL & SUGAR COMPANY, ILWU LOCAL NO. 142; WILLIE KENISON, JOZETTE MONTALVO, GLENN MONTALVO, ROBERTO ANDIRON, TEDDY ESPELETA, SAMUEL L. RODRIGUEZ, ABEL KAHOOHANOHANO, JOE KEANE, DAVID LOPES, STEVEN DIAZ , | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT ALEXANDER & BALDWIN
DBA HAWAIIAN COMMERCIAL & SUGAR COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendant Alexander & Baldwin,

Inc. dba Hawaiian Commercial & Sugar Company's ("HC&S") motion and the

supporting memoranda, the Court GRANTS HC&S's Motion for Summary Judgment.

BACKGROUND

On February 28, 2007, Plaintiff Ronald Henderson (aka Ronnie Henderson), an African-American male acting pro se, filed an Employment Discrimination Complaint (Doc. # 1) against HC&S, International Longshore & Warehouse Union Local No. 142 ("ILWU"), Willie Kennison, Jozette Montalvo, Glenn Montalvo, Roberto Andiron, Teddy Espeleta, Samuel L. Rodriguez, Abel Kahoohanohano, Augustine Joaquin (misidentified in the Complaint as "Joe Keane"), David Lopes, and Steven Diaz.  Plaintiff, a welder employed with HC&S from July 14, 1997 to approximately November 14, 2006, alleged employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq.

Previously, in September of 2006, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC") regarding the alleged discriminatory conduct.  In the charge of discrimination, which is attached to the Complaint, Plaintiff complained of discrimination, a hostile work environment and retaliation, including termination of employment, based on race or color under Hawaii Revised

2

Statutes chapter 378.  According to Plaintiff, on or about March 2, 2006, Samuel L. Rodriguez, a co-worker, subjected him to racial harassment when he made a racially derogatory comment (the "March 2 incident").   Plaintiff claimed that his supervisor, Glenn Montalvo ("G. Montalvo") was present and heard the comment, but did nothing in response.  Plaintiff further claimed that he alerted management to the alleged harassment but that corrective action was not taken by HC&S.

In response to the March 2 incident, HC&S senior human resources representative Jozette Montalvo ("J. Montalvo") conducted an investigation, during which she met with Plaintiff, Rodriguez[1], G. Montalvo, and other witnesses. On March 9, 2006, J. Montalvo met with Plaintiff, ILWU Business Agent Joe Franco, Rodriguez, and HC&S Supervisor David Lopes.  J. Montalvo informed Plaintiff that HC&S had conducted an investigation into the March 2 incident and had concluded that Rodriguez had made a racially derogatory comment but that it was not directed at Plaintiff.  J. Montalvo further informed Plaintiff that Rodriguez

---

[1] J. Montalvo met with Rodriguez on March 7, 2006.  During this meeting, Rodriguez admitted using the term "n__ger" in response to a question from G. Montalvo on March 2, 2006.  Rodriguez stated that the remark was not directed at Plaintiff, who was walking by at the time.  J. Montalvo informed Rodriguez that his comment was inappropriate, reminded him of HC&S's anti-discrimination policy, and informed him that he would be disciplined by HC&S.  On March 13, 2006, Rodriguez was issued a formal written warning, which he subsequently signed.

would be appropriately disciplined but Plaintiff appeared displeased with this result.

In early October 2006, HC&S received complaints from Rodriguez and Augustine Joaquin that Plaintiff had been acting in a threatening manner toward Rodriguez.  On October 6, 2006, J. Montalvo met with Plaintiff, ILWU Business Agent Roberto Andiron (misidentified as "Robert Roberto"), and G. Montalvo.  At this meeting, J. Montalvo provided Plaintiff with a copy of HC&S's Violence in the Workplace Policy and instructed Plaintiff to stay away from Rodriguez and to watch his body language towards him.  Plaintiff denied threatening Rodriguez.  Plaintiff was further informed that additional incidents of threatening behavior would result in disciplinary action against him.

On October 25, 2006, Plaintiff filed a second charge of discrimination against HC&S, complaining of retaliatory conduct subsequent to the October 6, 2006, meeting.[2]  Plaintiff claimed that Rodriguez had been deliberately coming into his area of work in an attempt to instigate a confrontation with Plaintiff. Plaintiff further alleged that he was being retaliated against for the charge of

---

[2] The second charge of discrimination is also attached to Plaintiff's Complaint.

discrimination he filed with the EEOC and HCRC on September 8, 2006,

specifically that he was being given undesirable work assignments.

On November 7, 2006, J. Montalvo was informed of another incident

involving Plaintiff and Rodriguez.  According to Rodriguez and a corroborating

witness, when Rodriguez passed near Plaintiff on the way to fill his water bottle,

Plaintiff turned towards him and put out his chest in a threatening manner.

Another HC&S employee interviewed by J. Montalvo claimed that Plaintiff talked

about Rodriguez every day and that Rodriguez was considering quitting out of fear

for his safety.  J. Montalvo instructed G. Montalvo to immediately suspend

Plaintiff.

On November 9, 2006, J. Montalvo conducted a meeting with

Plaintiff, G. Montalvo, and ILWU representative Abel Kahoohanohano to discuss

Plaintiff's suspension.  J. Montalvo gave Plaintiff another copy of HC&S's

Violence in the Workplace Policy and informed him that she had received another

complaint about his threatening behavior.  J. Montalvo informed Plaintiff that he

was suspended for three days and that the next incident of threatening behavior

would result in his termination.  At this point, Plaintiff became agitated and raised

his voice, at one point telling J. Montalvo that he was "not through with you yet."

Kahoohanohano told Plaintiff to calm down, to which Plaintiff allegedly replied,

"you're just as bad as they are.  You work for me."  Kahoohanohano left the

meeting.  Plaintiff followed Kahoohanohano outside, continuing to yell at him.

Kahoohanohano approached Plaintiff and allegedly said, "no one speaks to me like

that," at which point Plaintiff shoved him in the chest.  Kahoohanohano walked

away.  J. Montalvo contacted the police and filed a report.

On November 14, 2006, J. Montalvo and Charles Loomis, general

counsel for HC&S, conducted a further investigation into Plaintiff's behavior.

They spoke with Rodriguez and several other HC&S employees, all of whom

corroborated Plaintiff's use of threatening language and body language towards

Rodriguez and others since the March 2 incident.  As a result of this investigation,

HC&S terminated Plaintiff's employment on or around November 14, 2006.

Following his discharge, Plaintiff applied for unemployment

insurance with the State of Hawai`i Unemployment Insurance Division ("UID").

Plaintiff's application was denied because UID found that Plaintiff was discharged

for misconduct connected with his work, specifically for violating HC&S's

workplace violence policy.

On January 19, 2007, the EEOC issued a right to sue letter, informing

Plaintiff that his case was closed "on the basis of complaint withdrawn due to

complainant elect[ing] court action."  As previously stated, Plaintiff initiated the

instant suit on February 28, 2007.

On March 26, 2007, Defendants Rodriguez, Joaquin, Lopes, Diaz, J.

Montalvo, and G. Montalvo filed a motion to dismiss Plaintiff's Complaint (Doc. #

14), which this Court granted on June 21, 2007 (Doc. # 40).  On April 16, 2007,

Defendant ILWU filed a motion to dismiss (Doc. # 21), which this Court denied

without prejudice on July 3, 2007 (Doc. # 47).[3]  On July 26, 2007, Defendants

Kennison, Andiron, Espeleta, and Kahoohanohano ("Kennison Defendants") filed

a motion to dismiss (Doc. # 55), and, on July 30, 2007, ILWU filed a second

motion to dismiss (Doc. # 57).  Plaintiff filed a Motion for Addition to Complaint

for Relief Under the Americans with Disabilities Act ("motion to amend") on

October 9, 2007 (Doc. # 73), claiming that the court reporter erred in transcribing

his deposition in that, for instance, she did not convey the additional harassment

that occurred based on Plaintiff's alleged speech impediment.  On October 30,

2007, ILWU and Kennison Defendants responded to Plaintiff's motion to amend

_____

[3] ILWU argued for dismissal on the grounds that Plaintiff's Summons and Complaint were not delivered in accordance with Federal Rules of Civil Procedure 4(h)(1) and that the Summons did not name ILWU as a defendant.  Because Plaintiff was proceeding pro se, this Court determined that it had an obligation to construe his pleadings liberally.  Accordingly, the Court found that ILWU failed to establish defective service of process entitling it to dismissal.

7

(Doc. # 78), asserting that Plaintiff did not allege any additional claims against them.  HC&S filed the instant Motion for Summary Judgment on October 31, 2007 (Doc. # 80).  Plaintiff did not file an opposition.

This Court granted Kennison Defendants and ILWU's motions to dismiss without prejudice on November 7, 2007, and provided them with leave to file responsive pleadings should Plaintiff's motion to amend be granted (Doc. # 88).  The motion to amend was denied on November 20, 2007 (Doc. # 90).

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial has both

the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

The moving party satisfies its initial burden of production by producing evidence that either negates an essential element of the non-moving party's case or, after appropriate discovery, demonstrates that the non-moving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz, 210 F.3d 1099, 1106 (9th Cir. 2000).  Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana,

9

336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  Inferences may be drawn from underlying facts not in dispute, however, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

10

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally.  See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (same).  Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988).

## DISCUSSION

I.  Plaintiff's Discrimination and Retaliation Claims

In order to establish a discrimination or retaliation claim under Title VII, the plaintiff must produce evidence that gives rise to an inference of unlawful discrimination, either through direct evidence of discriminatory or retaliatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green.  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); see Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original).  Plaintiff has not asserted that he has any direct evidence of discriminatory or retaliatory

intent.[4]  Accordingly, Plaintiff must proceed under the <u>McDonnell Douglas</u> burden

shifting framework.

Under that framework, the plaintiff must first establish a prima facie

case proceed with the claims.  <u>Chuang v. Univ. of Cal. Davis, Bd. of Trs.</u>, 225 F.3d

1115, 1123-24 (9th Cir. 2000); <u>Ray</u>, 217 F.3d at 1240.  For a discrimination claim,

the plaintiff must prove a prima facie case that:  (1) he belongs to a protected class;

(2) he was performing his job according to the employer's expectations; (3) he was

subject to an adverse employment action; and (4) similarly situated individuals

outside his protected class were treated more favorably.  <u>Chuang</u>, 225 F.3d at

1123;  <u>Godwin</u>, 150 F.3d at 1220.  For a retaliation claim, the plaintiff's prima

facie case consists of establishing that: "(1) he engaged in a protected activity; (2)

his employer subjected him to an adverse employment action; and (3) a causal link

exists between the protected activity and the adverse action."  <u>Raad v. Fairbanks</u>

<u>North Star Borough School Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003); <u>Ray</u>, 217

F.3d at 1240.  "The requisite degree of proof necessary to establish a prima facie

---

[4] The only evidence of alleged racial discrimination referenced in Plaintiff's
Complaint and attached exhibits is Rodriguez's use of the racially derogatory term
during the March 2 incident.  This comment was not directed at Plaintiff (as
determined by the subsequent investigation by HC&S), was apparently a singular
occurrence, and was made by an employee with no supervisory authority.  This is
not adequate to prove discriminatory animus on the part of HC&S without
inference or presumption.

case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

If the plaintiff meets this burden under either of these tests,

> the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory, [or nonretaliatory] reason for the challenged action. If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Chuang, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

HC&S argues that summary judgment on Plaintiff's discrimination and retaliation claims should be granted because Plaintiff cannot establish a prima facie case for either allegation. Even if he could do so, HC&S argues, Plaintiff's claims are still baseless because HC&S had legitimate, nondiscriminatory reasons for terminating Plaintiff's employment and Plaintiff cannot prove pretext. For the reasons set forth below, the Court agrees.

A.  The Discrimination Claim

13

Plaintiff is unable to establish a prima facie claim of discrimination based on race or color because he presents no evidence that similarly situated co-workers were treated differently. Specifically, Plaintiff does not mention in his Complaint, nor does he establish by way of deposition testimony or otherwise, that similarly situated, non-African American HC&S employees were treated more favorably than him. On the contrary, HC&S provides substantial evidence that there were no employees similarly situated to Plaintiff with respect to Plaintiff's history of threatening behavior in the workplace. As such, Plaintiff fails to establish a prima facie case of discrimination and his claim is therefore legally baseless.

Even if Plaintiff could prove a case of prima facie discrimination, his claim still fails because HC&S produced ample, uncontroverted evidence that Plaintiff was terminated for a legitimate, nondiscriminatory reason and he cannot prove pretext. HC&S repeatedly warned Plaintiff that his threatening behavior was inappropriate and that further incidents would result in disciplinary action. When, during the November 9 meeting to discuss Plaintiff's three-day suspension, Plaintiff yelled threatening words at J. Montalvo and shoved ILWU representative Kahoohanohano, HC&S terminated Plaintiff's employment. This information, in conjunction with the numerous other examples of Plaintiff's aggressive behavior

described in the instant motion, is more than sufficient to establish a legitimate reason for his termination.  Indeed, courts have found that physically threatening behavior constitutes a legitimate, nondiscriminatory reason to discharge an employee.  Bateman v. United States Postal Serv., 151 F. Supp. 2d 1131, 1138-39 (N.D. Cal. 2001) (plaintiff properly discharged for shoving co-worker); Julien v. Scott, No. C 96-1858-CAL, 1998 WL 410896, at *6 (N.D. Cal. Jul. 17, 1998) (plaintiff properly disciplined for threatening to "take [co-worker's] face off"); Moosa v. Dolan Foster Enter., Inc., No. 95-03099, 1998 WL 30060, at *7 (N.D. Cal. Jan. 5, 1998) (awarding attorney's fees to defendant because plaintiff knew that "defendant had legitimate, nondiscriminatory reasons for his discharge: the threats he made against his co-workers two days before his discharge, as well as the string of prior threatening or violent incidents").

Furthermore, Plaintiff presents no allegation that could support a pretext argument in his Complaint, and declined the opportunity to address the issue by not filing an opposition to the instant motion.   As explained above, HC&S articulated a legitimate, nondiscriminatory reason for disciplining and eventually terminating Plaintiff, specifically Plaintiff's documented behavior of threatening acts.  In failing to oppose the instant motion, Plaintiff does not provide the Court with any information undermining the arguments presented by HC&S.

15

Even taking into account Plaintiff's pro se status, his discrimination claim fails as a matter of law.

B.  The Retaliation Claim

Similarly, Plaintiff's retaliation claim cannot withstand summary judgment because HC&S had a legitimate, nondiscriminatory reason for terminating him and he cannot prove pretext.  As stated above, a prima facie case of retaliation requires proof of three elements: (1) plaintiff engaged in protected activity; (2) plaintiff subsequently suffered a materially adverse action; and (3) there was a causal link between the protected activity and the materially adverse action.  Raad, 323 F.3d at 1197; Ray, 217 F.3d at 1240.  If the plaintiff establishes a prima facie case of retaliation, the defendant must articulate a legitimate, nondiscriminatory reason for the decision and, if it does so, the plaintiff must produce specific and substantial evidence showing that the defendant's reasons are a pretext for retaliation.  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2004); see also Funai v. R.L. Brownlee, 369 F. Supp. 2d 1222, 1226 (D. Haw. 2004).

The Court does not address whether Plaintiff established a prima facie case of retaliation because, as described in Section I.A, HC&S produced ample evidence demonstrating a legitimate, nondiscriminatory reason for terminating

Plaintiff, to which Plaintiff offered no response.  As such, regardless of Plaintiff's ability to establish a prima facie case of retaliation, his claim fails as a matter of law.

II.  Hostile Work Environment

Under Title VII, a plaintiff may maintain a hostile work environment claim based on race.  See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) ("A hostile environment claim required the plaintiff to show that his work environment was so pervaded by racial harassment as to alter the terms and conditions of his employment.").  "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 n.10 (2002).  As such, to maintain a hostile work environment claim based on racial harassment, Plaintiff must demonstrate that (1) he was subjected to verbal or physical conduct of a racial nature, (2) the conduct was unwelcome, and (3) it was so severe and pervasive that it had the effect of altering the conditions of Plaintiff's employment, creating an abusive work environment.  See Hale v. Haw. Publications, Inc., 468 F. Supp. 2d 1210, 1220 (D. Haw. 2006) (quoting Porter v. Cal. Dept. of Corrections, 419 F.3d 885, 892 (9th Cir. 2005)).

In order to establish a hostile work environment claim, "[t]he working environment must both subjectively and objectively be perceived as abusive." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (quotation marks and citations omitted).  The determination of whether a working environment is subjectively and objectively abusive is based on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

In the Complaint and accompanying exhibits, Plaintiff references only the March 2 incident – during which a co-worker used a racially derogatory term not in reference to Plaintiff – as an example of an abusive work environment.[5] Even assuming the derogatory comment was made in reference to Plaintiff, a single incident of this nature is insufficient to establish a hostile work environment claim. The Supreme Court held that "'[s]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Faragher v. City of Boca Raton, 524

---

[5] Plaintiff makes vague references to being given less desirable job assignments and being subjected to unequal terms and conditions of employment but does not offer specific factual support for these allegations.

18

U.S. 775, 788 (1998) (discussing Title VII) (internal citations omitted); see also

Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990) ("'stray'

remarks are insufficient to establish discrimination").  Thus, the "mere utterance of

an ethnic or racial epithet which engenders offensive feelings in an employee" does

not affect the conditions of employment to a sufficiently significant degree as to

violate Title VII.  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)

(internal quotation omitted).

> Regarding the specific racial epithet at issue here, courts have held

that its use in isolated instances is not "severe and pervasive."  See, e.g., Haskins v.

Owens-Corning Fiberglass Corp., 811 F. Supp. 534, 538-39 (D. Or. 1992) (calling

plaintiff a "n__ger" and other epithets did not rise to the level of pervasive

workplace harassment required for an employment discrimination action);

Hotchkins v. Fleet Delivery Serv., 25 F. Supp. 2d 1141, 1149 (D. Or. 1998)

(calling plaintiff a "n__ger" was not, by itself, actionable under Title VII).  In fact,

courts have set a much higher bar for establishing a "severe or pervasive" hostile

working environment.  See, e.g., Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.

1994) (holding that "a steady barrage of opprobrious racial comments [is] required

to show a racially hostile work environment" and dismissing plaintiff's race

harassment claim where his co-workers' use of the term "n__ger" and reference to

19

the Ku Klux Klan "did not . . . support the inference of pervasive racial

harassment") (internal citations omitted).

Plaintiff's claim falls short of this threshold.  Plaintiff points to a

single, isolated incident involving a co-worker's use of a racially derogatory

comment.[6]  The Court finds, based on its review of the totality of the

circumstances, that Plaintiff has not proffered evidence of frequent or severe

discriminatory conduct sufficient to establish that his working environment, either

subjectively and objectively, was abusive.  As such, even in light of Plaintiff's pro

se status, summary judgment is appropriate on Plaintiff's hostile work environment

claim.

---

[6] HC&S's motion for summary judgment references a second incident,
which occurred on September 20, 2002, as a possible basis for Plaintiff's hostile
work environment claim.  In that incident, an unidentified person wrote "wash your
black ass" on the dirt covering a co-worker's truck.  Plaintiff does not argue that
this incident is a basis for his claim and, thus, the Court does not consider it as
such.
    The Court notes, however, that had Plaintiff incorporated this additional
incident into his hostile work environment claim, the Court's rationale in denying
the claim would not have changed because two incidents, separated by over four
years, amount to stray remarks over a lengthy period of time.  Even in conjunction,
they are legally insufficient to establish a hostile work environment claim.

CONCLUSION

For the reasons stated above, the Court GRANTS HC&S's Motion for

Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 20, 2007.

_____
David Alan Ezra
United States District Judge

Ronald Henderson vs. Alexander & Baldwin, Inc., et al., Civil No. 07-00101 DAE-
LEK; ORDER GRANTING ALEXANDER & BALDWIN, INC. dba HAWAIIAN
COMMERCIAL & SUGAR COMPANY'S MOTION FOR SUMMARY
JUDGMENT